## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER A. BARRETT,      :    **CIVIL ACTION NO. 1:14-CV-1206**
                   :
        Plaintiff        :    (Judge Kane)
                   :
        v.         :    (Magistrate Judge Blewitt)
                   :
DETECTIVE MONG, *et al.*,      :
                   :
        Defendants     :

## REPORT AND RECOMMENDATION

### I.    BACKGROUND.

On June 23, 2014, Plaintiff Christopher A. Barrett, currently an inmate at the

Lebanon County Correctional Facility ("LCCF"), filed, *pro se*, this instant civil rights action

pursuant to 42 U.S.C. § 1983.[1]  **(Doc. 1)**.  Plaintiff also simultaneously filed a Motion to

Proceed *in forma pauperis*.  (Doc. 2).   However, since Plaintiff failed to sign his Motion to

Proceed *in forma pauperis,* he was directed to file another such Motion. (Doc. 6).  Plaintiff

then filed a signed Motion to Proceed *in forma pauperis* on July 7, 2014.  **(Doc. 7).**

Plaintiff's form civil rights Complaint consists of four (4) handwritten pages.  (Doc. 1,

pp. 1-4). As Defendants, Plaintiff names: (1) Det. Ryan Mong, Lebanon Police; and (2) Det.

Walton, Lebanon Police.  (*Id.*, p. 1).   Instead of stating his claim in the Statement of Claim

---

[1]Plaintiff recently filed another civil rights action with this Court on June 23, 2014.
*Barrett v. Karnes*, Civil No. 14-1250, M.D.Pa.  Plaintiff filed his 14-1250 action pursuant to 42
U.S.C. § 1983, naming Warden Robert Karnes, Deputy Warden of Security Clements, and
Corrections Officer John Doe of the prison mailroom as Defendants.  On June 30, 2014,
Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*.  On July 18, 2014, we issued a
Report and Recommendation recommending that the Court allow Plaintiff to proceed only
against Defendant CO John Doe with respect to his First and Fourteenth Amendment claim of
interference with mail.  (Doc. 7).   To date, the Court has not ruled on our R&R.

Section of his Complaint (Doc. 1, p. 2) as required, Plaintiff simply refers to one of his Exhibits attached to his Complaint, namely, his Lebanon Bureau of Police Complaint Against Police Officers dated March 31, 2014.  (*Id.*, pp. 5-6).  In his Lebanon Bureau of Police Complaint Against Police Officers, an internal Complaint alleging mistreatment by an officer of the Lebanon Bureau of Police, Plaintiff claimed that  excessive force was against him by Defendant Mong of the Lebanon County Drug Task Force during his arrest in a friend's house. Plaintiff stated that the force Defendant Mong used on him was unprovoked and unnecessary, and that if Defendant Walton had not intervened, he would have been more seriously injured.  Plaintiff claimed that he did sustain injuries to the back of his head and to his ribs.  Plaintiff also stated in his internal Complaint that drugs (cocaine) were planted on him by Detectives Mong and Walton, and that Mong has a vendetta against him since he has prevailed in court against Mong in the past.  (*Id.*, pp. 5-6).

Additionally, with respect to his instant Statement of Claim, Plaintiff refers to his other Exhibit attached to his Complaint, namely, his notarized letter to the Lebanon Chief of Police (Doc. 1, p. 7), in which Plaintiff stated that two police officers went to LCCF to interview him about his internal Police Bureau Complaint regarding his claims of police brutality and planting of drugs on him by Detective Mong. Plaintiff also stated that the officers tried to talk to him without his counsel being present, namely, the Lebanon County Public Defender's Office, and that the officers commented that "this planting of drugs on you by Det. Mong won't fly in court."  It appears that Plaintiff's interview by the two officers ended when Plaintiff indicated that he wanted his counsel present. Plaintiff further stated in

2

his letter that he would speak with the officers at another time with his counsel present.

Based on his Exhibits, it appears that Plaintiff is alleging a claim of excessive force by Detective Mong as well as claims of malicious prosecution and false arrest under §1983 against both Defendants Mong and Walton.  Finally, Plaintiff appears to be raising a violation of his *Miranda* rights and his Sixth Amendment right to counsel.  (*Id.*, p. 7).

This Court has jurisdiction over Plaintiff's § 1983 civil rights case pursuant to 28 U.S.C. §§ 1331 and 1343(a).  We will now screen Plaintiff's Complaint in accordance with §1915 of the PLRA.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

## II.    STANDARDS OF REVIEW.

### A.    PLRA

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C.  §1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

### B.        *42 U.S.C. § 1983*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").   "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be

shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

### C. *Motion to Dismiss*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will

... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and

legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

### III.     ALLEGATIONS OF COMPLAINT.[3]

As stated, instead of stating his claim in the Statement of Claim Section of his

Complaint (Doc. 1, p. 2) as required, Plaintiff refers to his Lebanon Bureau of Police internal

Complaint Against Police Officers and his letter to the Chief of Police. (*Id.*, pp. 5-7)   In his

Exhibits, as mentioned, Plaintiff appears to be raising a Fourth Amendment excessive force

claim against Defendant Mong.   Specifically, in his  internal Police Complaint, Plaintiff states

that he was at the home of an acquaintance when Defendant Mong entered the house.

(Doc. 1, p. 5).   Plaintiff states that Detective Mong announced he was part of the Lebanon

County Drug Task force and was searching the home in response to an illegal drug

transaction.   (*Id.*).   Plaintiff avers he consented to a search by Detective Mong twice, and that

no drugs were found on him during either search.   (*Id.*).   Plaintiff claims that he and

Detective Mong have history and as a result of Detective Mong's increased hostility during

their interaction, Plaintiff attempted to return to the restroom until Detective Mong obtained

a warrant.   Plaintiff then avers:

> Officer Mong tackled me as I continued to try to reach the restroom.  Officer
> Mong repeatedly punched me in the back of my head as I pleaded with him
> to stop because I have a bullet lodged in my right rib.  He responded with
> more punches and said "I fucking hate you!" Det. Walton yelled what are you
> doing? (sic) Officer Mong snapped out of it and cuffed me."

(*Id.*).

---

[3]The Court can consider Plaintiff's Exhibits submitted with his Complaint for present
screening purposes.  *See Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.); *Pension
Benefit Guarantee Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993); *Kuniskas
v. Walsh*, 2010 WL 1390870, *3 (M.D. Pa.). In fact, as stated above, Plaintiff's entire Statement
of Claim of his Complaint is based on his Exhibits.

Although Plaintiff does not mention the date the alleged interaction with Detective Mong occurred, we take judicial notice of his Criminal Docket, CP-38-0000762-2014, in the Court of Common Pleas of Lebanon County.[4]   In the Criminal Docket, it is indicated that March 11, 2014, was the day Plaintiff was arrested and thus, it appears that Plaintiff's allegations occurred on this date.

Plaintiff also appears to be asserting a claim of malicious prosecution and false arrest under §1983 against both Defendants Mong and Walton.  With regard to Defendant Mong, Plaintiff claims in his letter to the Lebanon County Chief of Police that "[y]our officers indicated a prejudice toward me already by commenting 'this planting of drugs on you by Det Mong won't fly in court.'" (Doc. 1, p. 7).  In his  internal Police Complaint, Plaintiff states that after Detective Mong searched him twice and did not find any drugs, "[t]hen Detective Walton searched me for a third time were (sic) suddenly cocain (sic) was 'found.'" (*Id.*, p. 6).  Thus, we construe Plaintiff to be raising a claims of malicious prosecution and false arrest based on his Exhibits.

Plaintiff **further** appears to be attempting to allege a violation of his *Miranda* rights and his Sixth Amendment right to counsel.  Plaintiff states in his letter to the Lebanon Chief of Police that "[t]wo of your officers came to LCCF apparently in an effort to discuss the incident to which I've complained of concerning Det. Ryan Mong." (*Id.*, p. 7).  Plaintiff also states "[u]nfortunately your officers tried to talk to me without counsel." (*Id.*).  Thus, we

---

[4]We have obtained a copy of Plaintiff Barrett's Lebanon County Criminal Docket for case number CP-38-0000762-2014 at http://ujsportal.pacourts.us.   We take judicial notice of Plaintiff's Lebanon County Criminal Docket.

construe Plaintiff to be alleging a violation of his *Miranda* rights and his Sixth Amendment right to counsel.

As relief in his Complaint, Plaintiff requests unspecified compensatory damages for his medical bills and all future treatment required.  (*Id.*, p. 3).  Further, Plaintiff wants the Lebanon County Police Department "to be reprimanded ordered (sic) to create & initiate a Training (sic) course on proper use of force procedures." (*Id.*).  Finally, Plaintiff requests unspecified compensatory damages for loss of future earnings and "[p]unitive damages in the amount of 50,000,000.00 (fifty million dollars) to ensure this never happens again to another person."[5] (*Id.*).

## IV.     DISCUSSION.

We begin by addressing Plaintiff's claim that Defendant Mong violated his Fourth Amendment right to protection from excessive force during an arrest.  Plaintiff avers:

> Officer Mong tackled me as I continued to try to reach the restroom.  Officer Mong repeatedly punched me in the back of my head as I pleaded with him to stop because I have a bullet lodged in my right rib.  He responded with more punches and said "I fucking hate you!" Det. Walton yelled what are you doing? (sic) Officer Mong snapped out of it and cuffed me."

(*Id.*).

As stated, we have determined that the alleged incident between Defendant Mong

---

[5]

We note that Plaintiff cannot request specific amounts of monetary damages (Doc. 1, p. 3). Since Plaintiff seeks unliquidated damages, he cannot claim  specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., any request for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

and Plaintiff occurred on March 11, 2014, the date of Plaintiff's arrest.  (Lebanon Court of

Common Pleas Criminal Docket Number CP-38-0000762-2014).

The standard governing excessive force claims in the course of an arrest, investigatory

stop or other type of seizure is specified by the United States Supreme Court in *Graham v.*

*Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989).  Pursuant to *Graham*, excessive force claims

are analyzed under the Fourth Amendment's objective reasonableness standard.  *Id.*  Thus,

because Plaintiff's claim arose while he was being arrested, Plaintiff's excessive force claim

must be considered under the Fourth Amendment's reasonableness standard.

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show

that a seizure occurred and that it was unreasonable.  *Curley v. Klem*, 298 F.3d 271, 279

(3d. Cir. 2002); *Rivas v. City of Passaic*, 365 F.3d 181 (3d. Cir. 2004).  A seizure of the

plaintiff occurs "[w]henever an officer restrains the freedom of [the plaintiff] to walk away."

*Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694 (1985).  The Third Circuit in *Rivas v. City*

*of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) stated:

> An excessive force claim must be evaluated "from the perspective
> of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight" and "must embody the allowance for the
> fact that police officers are often forced to make split-second
> judgments -- in circumstances that are often tense, uncertain, and
> rapidly evolving -- about the amount of force that is necessary in
> a particular situation."  *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865.
> The inquiry turns on "objective reasonableness," meaning that the
> standard is whether the police officer's "actions [were] 'objectively
> reasonable' in light of the facts and circumstances" facing the
> officer, regardless of the officer's intent or motivation.  *Id.* at 397,
> 109 S.Ct. 1865.

In the context of a §1983 claim, as we are presented with in this case, there is a

three-part test to be applied in determining the reasonableness of the force which was used.

The following factors are to be considered:

    1.  "the severity of the crime at issue;"

    2.  "whether the suspect poses an immediate threat to the safety of the officers or others;" and

    3.  "whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight. "

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1867.

    The *Rivas* Court stated that:

> Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  The reasonableness of the use of force is normally an issue for the jury.  *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999).  While some courts "freeze the time frame" and consider only the facts and circumstances at the precise moment that excessive force is applied, other courts, including this one, have considered all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force.  *See, e.g., Abraham*, 183 F.3d at 291.

*Rivas*, 365 F.3d at 198.

    Careful attention to the facts and circumstances of each particular case must be given, including the aforementioned three factors.  *Graham,* 490 U.S. at 396.  In analyzing these three factors in relation to the aforementioned facts, we find that Plaintiff has sufficiently alleged his Fourth Amendment excessive force claim as against Defendant Mong.  Plaintiff has alleged personal involvement of Defendant Mong as he described this

Defendant tackled and punched him in the head repeatedly.  Plaintiff stated that the force Defendant Mong used was unprovoked. Further, Plaintiff alleged a seizure occurred because he was restrained by handcuffs and thus not free to walk away.  Plaintiff has also properly alleged the force Defendant Mong used was unreasonable because he avers he "pleaded with him to stop because I have a bullet lodged in my right rib," yet Defendant Mong allegedly continued punching Plaintiff.  (Doc. 1, p. 5).

Thus, we will recommend that Plaintiff's Fourth Amendment excessive force claim against Defendant Mong be allowed to proceed.

Plaintiff also appears to be raising a claim of malicious prosecution and false arrest against both Defendants Mong and Walton under §1983.  With respect to Defendant Mong, Plaintiff stated in his letter to the Police Chief regarding his interview by two police officers in LCCF that "[y]our officers indicated a prejudice toward me already by commenting 'this planting of drugs on you by Det Mong won't fly in court.'" (Doc. 1, p. 7).  Regarding Defendant Walton, Plaintiff claims "[t]hen Detective Walton searched me for a third time were (sic) suddenly cocain (sic) was 'found.'" (*Id.*, p. 6).  Thus, Plaintiff seems to be claiming Defendant Mong planted the cocaine on him and that Defendant Walton eventually found the drugs on Plaintiff.  Based on the above facts, we construe Plaintiff to  be raising claims of malicious prosecution and false arrest under §1983.

It is well-settled that "[t]o prove malicious prosecution  ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) *the criminal proceeding ended in plaintiff's favor;* (3) the proceeding was initiated without probable cause; (4) *the defendants*

*acted maliciously or for a purpose other than bringing the plaintiff to justice*; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir.2003) (emphasis added); *Kossler v. Crisanti,* 564 F. 3d 181, 186 (3d Cir. 2009); *Piazza v. Lakkis*, 2012 WL 2007112, *7 (M.D. Pa. June 5, 2012)(citation omitted). "[A] claim for malicious prosecution 'permits damages for confinement imposed pursuant to legal process.'" *Piazza v. Lakkis*, 2012 WL 2007112, *8(citations omitted). Further, "a claim for malicious prosecution seeks to remedy 'the deprivation of liberty accompanying prosecution, not prosecution itself.'" *Piazza v. Lakkis*, 2012 WL 2007112, *8(citations omitted). Thus, "a Plaintiff's claim for malicious prosecution begins not with an arrest, which is not pursuant to legal process, but with the indictment." *Piazza v. Lakkis,* 2012 WL 2007112, *8(citations omitted).

A false arrest claim under §1983 also has an element requiring that Plaintiff show the criminal proceeding was initiated without probable cause.   To succeed on a false arrest claim under § 1983, the Court in *Kokinda v. Breiner,* 557 F. Supp. 2d 581, 592 (2008 M.D. Pa.)*,* stated:

> A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Garcia v. County of Bucks,* 155 F.Supp.2d 259, 265 (E.D.Pa.2001) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995)). To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest." *Id.*
> "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.*

> "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir.1995). However, unlike a malicious prosecution claim, for which each criminal charge is analyzed independently, a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved. *Johnson*, 477 F.3d at 75; *see also Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").

*See also Cummings v. City of Phila.*, 137 Fed. Appx. 504, 506 (3d Cir. 2005).

In order for Plaintiff to prevail on his malicious prosecution and false imprisonment claims under §1983, he must satisfy each of the above stated elements. *Kossler v. Crisanti*, 564 F. 3d at 186.

As stated above, Plaintiff's Court of Common Pleas of Lebanon County Criminal Docket indicates Plaintiff has not yet had a trial for the charges brought against him regarding his March 11, 2014, arrest by Defendants Mong and Walton.  Plaintiff has been charged with: (1) Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver; (2) Int Poss Contr Subst By Per Not Reg; (3) Resist Arrest/Other Law Enforce; and (4) Use/Poss of Drug Paraph.  (Court of Common Pleas of Lebanon County Criminal Docket Number CP-38-CR-0000762-2014).  All of the above charges were held for trial after Plaintiff's preliminary hearing, and Plaintiff's trial is scheduled for September 8, 2014.  (*Id.*).

As such, Plaintiff does not have a favorable termination regrading the charges filed against him by Defendants. We find that the constitutional claims Plaintiff is asserting against Defendants Mong and Walton for malicious prosecution and false arrest are *Heck* barred. Thus, insofar as Plaintiff is raising constitutional claims under §1983 against Defendants

14

challenging the stated criminal charges regarding his March 11, 2014 arrest, we find that

these claims are *Heck* barred.  *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994).

In *Heck*, the Supreme Court stated:

> A claim for damages bearing that relationship to a conviction or sentence that
> has *not* been so invalidated is not cognizable under § 1983. Thus, when a
> state prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or sentence
> has already been invalidated.

*Id.* at 487; *see also Kossler v. Crisanti,* 564 F. 3d 181, 187 (3d Cir. 2009).

In *Taylor v. JFC Staffing Assoc.*, 690 F. Supp. 2d 357, 375-77 (M.D. Pa. 2009), the

Court stated:

> In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)
> the Supreme Court announced what is called the "favorable termination rule,"
> which forecloses certain § 1983 actions for plaintiffs who have plead guilty to
> criminal charges.  In *Heck,* the Supreme Court stated:
>
>> [I]n order to recover damages for allegedly unconstitutional conviction
>> or imprisonment, or for other harm caused by actions whose
>> unlawfulness would render a conviction or sentence invalid, a § 1983
>> plaintiff must prove that the conviction or sentence has been reversed
>> on direct appeal, expunged by executive order, declared invalid by a
>> state tribunal authorized to make such determination, or called into
>> question by a federal court's issuance of a writ of habeas corpus.... A claim
>> for damages bearing relationship to a conviction or sentence that has
>> not been so invalidated is not cognizable under § 1983.  *Id.* at 486-87, 114
>> S.Ct. 2364 (emphasis in original). The final termination rule announced in
>> Heck also bars those § 1983 claims that have the effect of impugning the
>> underlying criminal conviction. *See Marable v. Pottsgrove Twp.,* 176 Fed.Appx.
>> 275, 281 (3d Cir.2006).

"The *Heck* bar would apply whether Plaintiff is still a pretrial detainee or whether he

has already been convicted of the charges for which he is currently incarcerated."  *Asque v.*

*Commonwealth Allegheny Cnty.*, 2007 WL 1247051 (W.D.Pa. Apr. 27, 2007). Thus, to the extent that Plaintiff is claiming Defendant officers maliciously prosecuted him and falsely arrested and imprisoned him in violation of the Fourth Amendment with respect to the charges filed against him, we find that these constitutional claims are *Heck* barred. As such, we will recommend that Plaintiff's constitutional claims against Defendants challenging the stated charges, be dismissed without prejudice until Plaintiff has either been acquitted at trial, has had his sentences and convictions overturned on appeal in the state courts, or by filing a habeas petition in federal court under 28 U.S.C. §2254.

Plaintiff also appears to be raising an unspecific constitutional violation when the two unnamed police officers questioned him about his official police complaint at LCCF. Specifically, Plaintiff states "[t]wo of your officers came to LCCF apparently in an effort to discuss the incident to which I've complained of concerning Det. Ryan Mong." (Doc. 1, p. 7). Plaintiff later claims "[u]nfortunately your officers tried to talk to me without counsel." (*Id.*). We construe Plaintiff's statements to be raising claims of violations of his *Miranda* rights and his Sixth Amendment right to counsel.

In *United States v. Mesa*, 638 F.2d 582, 584 (3d Cir. 1980), the Court stated:

*Miranda* held that when the government conducts a "custodial interrogation," it may not introduce statements made by the defendant at this interrogation unless he first had been given the now-familiar *Miranda* warnings.

..................................................................................

*Miranda* warnings are designed to protect against the evils of "custodial interrogation," and they are not intended to unduly interfere with a proper system of law enforcement or to hamper the police's traditional investigatory functions. *See Miranda v. Arizona*, 384 U.S. at 481, 86 S. Ct. at 1631, 16 L. Ed. 2d 694.

As stated, with respect to his alleged violation of *Miranda*, Plaintiff avers that two police officers came to LCCF to discuss the incident concerning Det. Mong. Plaintiff in no way claims that the two unnamed officers who questioned him about his formal police complaint against Detectives Mong and Walton were inquiring about the criminal charges filed against him and about his forthcoming criminal trial.  Rather, it is clear the officers went to LCCF for the sole reason of interviewing Plaintiff about him potentially being victim to a crime, *i.e.*, police brutality and excessive force during his arrest.  *Miranda* is not implicated in the instant case because there was no police-dominated atmosphere that concerned Plaintiff's criminal case.  In any event, Plaintiff admits that when he stated he wanted his counsel present during the interview, the two officers stopped the interview.  Plaintiff also stated that he would agree to a future interview with police officers in the presence of his counsel.

We recommend that insofar as Plaintiff is alleging a violation of his *Miranda* rights, such a claim be dismissed with prejudice since the stated case law establishes futility in allowing Plaintiff to amend this claim.

Plaintiff also indicates that his Sixth Amendment right to counsel was similarly violated when the two officers came to interview him in prison about his official police complaint.  In *Marinelli v. Beard*, 2012 WL 5928367, *48-49, adopted by 2012 WL 5928414 (M.D.Pa. 2012), the Court stated:

> The Sixth Amendment establishes a criminal defendant's right to the assistance of counsel. *See United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146(1984). This right to counsel arises at the initiation of adversarial judicial proceedings against the defendant. *See Kirby v. Illinois,* 406

U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Judicial proceedings against an accused include the "formal charge, preliminary hearing, indictment, information, or arraignment."*Id.* at 688–89.Thus, when formal criminal charges are brought against an accused, the Sixth Amendment establishes the defendant's right to have an attorney to assist in his defense. *Id.*

.....................................................................................................

The government is forbidden from deliberately eliciting incriminating evidence from the defendant about the crime outside the presence of his counsel. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

Plaintiff did not date his letter to the Lebanon Chief of Police, so it is not clear what phase of the adversarial judicial proceedings had occurred when the officers went to LCCF to interview him about his police complaint.  However, it is clear the Sixth Amendment right to counsel is not implicated in the instant case.  As reasoned above, the two unnamed police officers were not interviewing Plaintiff in an effort to deliberately elicit incriminating evidence against him regarding his present criminal charges.  Rather, they went to LCCF to interview  Plaintiff in order to get more information as to whether he was victim of a crime, namely, police brutality.  Plaintiff explicitly states that the officers came to LCCF to discuss the police complaint he filed against Detective Mong.   Also, as stated, when Plaintiff indicated to the two officers that he wanted his counsel present during the interview, the interview stopped. Thus, it is abundantly clear that Plaintiff's Sixth Amendment right to counsel was not violated by the two unnamed police officers.  As such, insofar as Plaintiff is claiming a violation of his Sixth Amendment right to counsel, we will recommend that the claim be dismissed with prejudice.

Based on the above, we find futility in allowing Plaintiff leave to amend his *Miranda*

18

and Sixth Amendment right to counsel claims since the purpose of the officers' visit to LCCF

was to investigate Plaintiff's formal complaint against the police department and not to

interrogate him about his pending criminal charges.  *See Grayson v. Mayview State Hosp.*,

293 F.3d 103, 114 (3d Cir. 2002)(*pro se* Complaints should not be dismissed without leave

to amend unless "amendment would be inequitable or futile").

## V.     RECOMMENDATION.

Based on the foregoing, we respectfully recommend that:

1)      Plaintiff's request for specific damages be **STRICKEN FROM HIS**

**COMPLAINT**.

2)      Plaintiff's claim of excessive force against Defendant Mong **BE ALLOWED TO**

**PROCEED**.

3)      Plaintiff's claims of malicious prosecution and false arrest against Defendants

Mong and Walton be **DISMISSED WITHOUT PREJUDICE**.

4)      Plaintiff's claims of a violation of his *Miranda* rights and his Sixth Amendment

right to counsel be **DISMISSED WITH PREJUDICE**.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: July 28, 2014**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER A. BARRETT, | : | **CIVIL ACTION NO. 1:14-CV-1206** |
| | : | |
| Plaintiff | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DETECTIVE MONG, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 28, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

 

 

_____ **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

 

**Dated: July 28, 2014**